UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| HORACE GLENN, et al., | : | |
|  | : | Civil Action No. 07-112 (PGS) |
| Plaintiffs, | : | |
|  | : | *Memorandum &* |
| v. | : | O R D E R |
|  | : | |
| GEORGE HAYMAN, et al., | : | |
|  | : | |
| Defendants. | : | |
|  | : | |

This matter has come before the Court on submission of a civil complaint by above listed Plaintiffs, who are confined at the Adult Diagnostic and Treatment Center, Avenel, New Jersey, and who have been convicted of sex offenses or plead guilty to sex offense charges, see Docket Entry No. 1, at 25-28, and Plaintiffs' application for appointment of pro bono counsel. See Docket Entry No. 2. Plaintiffs did not prepay the filing fee or file an application to proceed in forma pauperis. See Docket Entries Nos. 1, 2.

It appearing that:

1.   On January 9, 2007, the Court received a civil complaint from Plaintiffs. The complaint is silent as to the specific facts serving as basis for the claims that are being or may be asserted by each individual Plaintiff. See Docket Entry No. 1.

2.   Plaintiffs filed the aforesaid complaint as self-designated representatives of a putative class consisting of themselves

and others whom Plaintiffs defined as all those similarly situated. See id. at 41-42 (clarifying that the "number of members of the class . . . is approximately 650 individuals"). Plaintiffs further subdivide themselves into five putative subclasses, namely (a) "those . . . who were committed to 'institutional confinement' under Title 2A:164-1"; (b) "those . . . who were committed to 'institutional confinement' under Title 2D:47-3 without . . . parole ineligibility or mandatory minimum sentence, or . . . completed the[ir] . . . sentence"; (c) "those . . . who were committed to 'institutional confinement' under Title 2D:47-3 prior to enactment of P.L. 1998, c. 72"; (d) "those .. . who were sentenced pursuant to P.L. 1998, c. 72"; and "those . . . who are Hispanic and . . . speak limited or no English." See id. at 6-7. Plaintiffs self-allocate themselves to the aforesaid subclasses, having twenty-two Plaintiffs as a maximum number of Plaintiffs in a subclass, and one Plaintiff as a minimum number of Plaintiffs in a subclass.[1] See id. at 25-28. While certain subclasses are comprised of Plaintiffs who are prisoners in custody,

---

[1]     For reasons not entirely clear to this Court, Plaintiffs' *five* subclasses correspond to *six* groups of named plaintiffs. See Docket Entry No. 1 at 25-28. The number of Plaintiffs in these groups is, in progressive order, one, two, four, nine, seventeen and twenty-two, and some Plaintiffs are listed as members of two or more groups. See id.

2

other subclasses consist of Plaintiffs who are individuals receiving medical treatment. See id.

3.  Plaintiffs' complaint alleges that their putative class has the following common questions of law and fact: (a) degree and validity of punitive conditions of confinement; (b) degree and validity of denial of treatment; (c) degree and validity of counter-therapeutic conditions of confinement; (d) adequacy and validity of due process protection during disciplinary proceedings; (e) degree and validity of sanctions; (f) degree and validity of treatment causing impotency; (g) validity of N.J.S.A. § 30:4-27.27(b); (h) validity of unspecified "legislative enactments"; (i) sufficiency of unspecified "regulations, policies and procedures"; (j) degree and validity of acts that might appear retaliatory; (k) validity of administering treatment to those committed for the purposes of punishment; (l) validity of administering treatment to those committed pursuant to a plea negotiation; (m) validity of Defendants' billing of the State of New Jersey and the Department of Corrections; (n) validity of Defendants' transfer and housing practices; and (o) validity of treatment of Hispanic class members. See id. at 42-47. The complaint expressly alleges that "[t]he conditions, practices, and omissions [of Defendants are] common to all class members." See id. at 47.

3

4.    The complaint sets forth the following causes of action: (a) "Custody, discipline and failure to treat"; (b) "Denial of psychiatric/psychological treatment grounded in exercise of professional judgement"; (c) "Denial of right to privileged communications in treatment"; (d) "Unconstitutional legislative enactments"; (e) "Arbitrary and capricious decisions impacting protected liberty interests"; (f) "Illegal punitive confinement of those committed solely for psychological treatment"; (g) ""breach of plea bargain contracts"; (h) "Breach of contract"; (i) "Racial discrimination against Hispanic patients"; (j) "Violation of Federal Racketeer Influenced and Corrupt Organizations Act"; and (k) "Violation of State Racketeer Influenced and Corrupt Organizations Act." See id. at 181-211.

5.    Plaintiffs seek declaratory and injunctive relief, monetary damages, all legal costs and expenses, reasonable attorney fees[2] and treble damages under 18 U.S.C. § 1961 and N.J.S.A. § 2C:41-1. See id. at 211-220.

6.    A party seeking class certification bears the burden of proving that the proposed class action satisfies the requirements of Federal Rule of Civil Procedure 23. See

---

[2]

The Court is not entirely clear as to what remedy in the form of attorney fees is envisioned by Plaintiffs in view of Plaintiffs' current pro se status and request for appointment of pro bono counsel.

4

Johnston v. HBO Film Mgmt., Inc., 265 F.3d 178, 183-84 (3d Cir. 2001).   To meet this burden, Plaintiffs must satisfy the four prerequisites of Rule 23(a) and show that the action can be maintained under at least one of the subsections of Rule 23(b). See id.; see also Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 613-14 (1997).   The Court of Appeals for the Third Circuit has recognized the utility, and often the necessity, of looking beyond the pleadings at the class certification state of litigation.   See Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 168-69 (2001) ("In reviewing a motion for class certification, a preliminary inquiry into the merits is sometimes necessary to determine whether the alleged claims can be properly resolved as a class action").   Despite that review, "it is not necessary for the plaintiffs to establish the merits of their case at the class certification stage" and "the substantive allegations of the complaint must be taken as true." Chiang v. Veneman, 385 F.3d 256, 262 (3d Cir. 2004).

7.   To be certified as a class, plaintiffs must satisfy Federal Rule of Civil Procedure 23(a).   Rule 23(a) provides as follows:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or

5

defenses of the class, and (4) the representative parties
will fairly and adequately protect the interests of the
class.

Commonly referred to as numerosity, commonality, typicality,
and adequate representation, these four requirements are
"meant to assure both that class action treatment is necessary
and efficient and that it is fair to the absentees under the
particular circumstances." Baby Neal v. Casey, 43 F.3d 48, 55
(3d Cir. 1994).

8.   Both size of class and complexity of litigation should be
limited to encourage manageability of class suits.   Rule
23(c)(4) permits division of any action into subclasses so as
to increase manageability. See Dore v. Kleppe, 522 F.2d 1369,
reh'g denied, 526 F.2d 697  (5th Cir. 1975).   Rule 23(c)(4)
provides that, if "a class [is] divided into subclasses[,]  .
. . each subclass [is] treated as a class." Therefore, "[a]ny
subclass formed must itself meet all requirements of class
action," Avery v. Heckler, 584 F. Supp. 312 (D. Mass. 1984);
see also  De Gidio v. Porpich, 612 F. Supp. 1383 (D. Minn.
1985), and even if subclassification is appropriately,
subclasses cannot be certified unless the party seeking
certification can demonstrate that requirements of FRCP 23 are
established.   See Pickett v. IBP, Inc., 197 F.R.D. 510 (M.D.
Ala. 2000).

6

8.   Numerosity is the first prerequisite listed in Rule 23(a). "Numerosity requires a finding that the putative class is so numerous that joinder of all members is impracticable." Newton, 259 F.3d at 182; Fed. R. Civ. P. 23(a)(1). "No single magic number exists satisfying the numerosity requirement." Moskowitz v. Lopp, 128 F.R.D. 624, 628 (E.D. Pa. 1989). The Court of Appeals, however, generally has approved classes of forty or more. See Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001). In the case at bar, Plaintiff's putative class of 650 appears to satisfy the numerosity requirement.[3] See Weiss v. York Hospital, 745 F.2d 786, 808 (3d Cir. 1984) (clarifying that classes that include hundreds of members suffice for purposes of this prerequisite). By contrast, no subclass offered by Plaintiffs, ranging from one to twenty-two members, satisfies the requirement, and Plaintiffs' complaint provides this Court with no information as to whether (a) any

---

[3]     It is not entirely clear from the face of the Complaint whether all 650 people are treated as sexual predators or the number 650 is comprised of treated sexual predators, as well as persons confined at Avenel for the purpose of receiving other form of treatment. While, obviously, the latter presumption reduces the putative class indefinitely, the Court, at the instant stage, is drawing a presumption in favor of Plaintiffs in accordance with the Third Circuit's guidance in Eisenberg v. Gagnon, 766 F.2d 770, 755 (3d Cir. 1985) (stating that "[t]he interests of justice require that in a doubtful case . . . any error, if there is to be one, should be committed in favor of allowing a class action," and quoting Kahan v. Rosenstiel, 424 F.2d 161, 169 (3d Cir. 1970)), and presumes that the entire putative class of 650 people consists of treated sexual predators.

of these putative subclasses have more members than those
specifically named in the complaint, or (b) if these putative
subclasses have more members than those specifically named in
the complaint, whether joinder of all members within each
subclass is impracticable.  Consequently, the Court concludes
that the numerosity requirement is satisfied as to the
putative class but not satisfied as to putative subclasses,
and certification as to the latter would be unwarranted.

9.   The next Rule 23(a) prerequisite is commonality.  To satisfy
the commonality requirement, Plaintiffs must show the
existence of at least one question of law or fact common to
the class.  See  Johnston v. HBO Film Mgmt., 265 F.3d 178, 184
(3d Cir. 2001).  "Commonality does not require an identity of
claims or facts among class members; instead, the commonality
requirement will be satisfied if the named plaintiffs share at
least one common question of fact or law with the grievances
of the prospective class."  Id. (quoting In re the Prudential
Ins. Co. of Am. Sales Practices Litig., 148 F.3d 283, 310 (3d
Cir. 1998) (internal quotations omitted)).  "All that is
required is that the litigation involve some common questions
and that plaintiffs allege harm under the same legal theory."
Baby Neal, 43 F.3d at 58.  "Because the requirement may be
satisfied by a single common issue, it is easily met . . . ."
Baby Neal, 43 F.3d at 56.   It is not necessary that all

8

putative class members share identical claims.  <u>See</u> <u>Hassine v. Jeffes</u>, 846 F.2d 169, 176-177 (3d Cir. 1988).  "Even where individual facts and circumstances do become important to the resolution, class treatment is not precluded."  <u>Baby Neal</u>, 43 F.3d at 57.   Therefore, this Court finds that this prerequisite is met by Plaintiffs' application with respect to both the putative class and putative subclasses.

10.  Rule 23(a)(3) provides that the typicality requirement is satisfied if the "claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work for the benefit of the entire class through the pursuit of their own goals.  <u>See</u> <u>In re Prudential Ins. Company of America</u>, 148 F.3d 283, 311 (3d Cir. 1998).  The typicality test is not overly demanding.  <u>See</u> <u>O'Keefe v. Mercedes-Benz USA, LLC</u>, 214 F.R.D. 266, 289 (E.D. Pa. 2003).  The typicality requirement may be met despite the existence of factual differences between the claims of the named plaintiffs and the claims of the proposed class.  <u>See</u> <u>Eisenberg</u>, 766 F.2d at 786.  If "the class representatives . . . present those common issues of law and fact that justify class treatment, thereby tending to assure that the absent class members will be adequately represented,"

then Rule 23(a)(3) is satisfied. Hoxworth v. Blinder, Robinson & Co., Inc., 980 F.2d 912, 923 (3d Cir. 1992) (quoting Eisenberg, 766 F.2d at 786). "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the class of the class members, and if it is based upon the same legal theory." Id. at 923. However, in the case at bar, the typicality of claims and defenses does not appear to be present with respect to the putative class in view of uniqueness of the legal tests (and corresponding defenses) applicable to violations of civil rights through unconstitutional denial of medical treatment to those deemed in custody, see Helling v. McKinney, 509 U.S. 25, 31 (1993); Rhodes v. Chapman, 452 U.S. 337, 349 (1981); White v. Napoleon, 897 F.2d 103 (3d Cir. 1990), as compared to violations of civil rights through unconstitutional denial of medical treatment to those *not* deemed in custody, see Seling v. Young, 531 U.S. 250, 265 (2001); Youngberg v. Romeo, 457 U.S. 307, 324 (1982); Jackson v. Indiana, 406 U.S. 715, 738 (1972), as compared to violations of civil rights guaranteed under the Equal Protection Clause. See Vacco v. Quill, 521 U.S. 793, 799 (1997); City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985); Washington v. Davis, 426 U.S. 229, 239 (1976). Therefore, this Court finds that this

10

prerequisite is not satisfied by Plaintiffs' application with respect to the putative class. See Beck v. Maximus, Inc., 457 F.3d 291, 300 (3d Cir 2006) (noting that "class certification [is defeated upon showing of] some degree of likelihood [that] a unique defense will play a significant role at trial").

11.  Rule 23 requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). However, where the class includes members with divergent interests because the time of class membership is a factor, the representatives may not adequately represent the class. See Bogosian v. Gulf Oil Corp., 561 F.2d 434, 449 (3d Cir. 1977); Miller v. Hygrade Food Prods. Corp., 198 F.R.D. 638 (E.D. Pa. 2001); see also Wetzel v. Liberty Mut. Ins. Co., 508 F.2d 239 (3d Cir. 1975). In the case at bar, the representative parties and the absentee members of the putative class include those anticipating soon release from the facility, as well as those facing a very extensive and lengthy confinement or treatment, and the interests of the former may substantially diverge from those of the latter. Therefore, this Court finds that this prerequisite is also not met by Plaintiffs' application with respect to the putative class.

12.  In addition to satisfying Rule 23(a), Plaintiffs must also show that the putative class or subclass falls under at least

one of the three subsections of Rule 23(b).  Moreover, since

Plaintiffs' putative class seeks money damages, the class must

satisfy the requirements of Rule 23(b)(3) regarding the issues

of predominance and superiority.[4]  See Grider v. Keystone

Health Plan Cent., Inc., 2006 U.S. Dist. LEXIS 93085, at *36

(E.D. Pa. Dec. 21, 2006).  This requirement reads as follows:

> An action may be maintained as a class action if the
> prerequisites of subdivision (a) are satisfied, and in
> addition[,] the court finds that the questions of law or
> fact common to the members of the class predominate over
> any questions affecting only individual members, and that
> a class action is superior to other available methods for
> the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).

The Rule 23(b)(3) requirement that common issues predominate

ensures that a proposed class is "sufficiently cohesive to

warrant certification."  Newton, 259 F.3d at 187.  The

predominance requirement of Rule 23(b) is more rigorous than

the commonality requirement of Rule 23(a).  See McMahon Books,

Inc. v. Willow Grove Assocs., 108 F.R.D. 32, 35 (E.D. Pa.

1985).  The Supreme Court has held that, while "[p]redominance

is a test readily met in certain cases alleging consumer or

securities fraud[, certification of a class should be made

---

[4]
Class action is less favored where plaintiffs seek monetary
damages, because any award of damages requires case-by-case
examination of individual claims, a process best suited to
individual adjudications rather than class action lawsuits.  See
Contawe v. Crescent Heights of Am., Inc., 2004 U.S. Dist. LEXIS
25746 (E.D. Pa. Dec. 21, 2004).

12

with] caution where individual stakes are high and disparities among class members great." <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 625 (1997) (holding that, although a proposed class of asbestos plaintiffs shared the goal of reaching a settlement, the commonalities did not predominate over individual questions of causation regarding each plaintiff's degree of asbestos exposure under different conditions, pre-existing medical conditions, and tobacco use); <u>see also</u> <u>Windham v. Am. Brands, Inc.</u>, 565 F.2d 59, 68 (4th Cir. 1977) ("[W]here the issue of damages and impact . . . requires separate minitrials . . . courts have found that the staggering problems of logistics thus created make the damage aspect of the case predominate, and render the case unmanageable as a class action") (internal citations omitted). In addition, the requirement that a class action be the superior method of resolving the claims ensures that there is no other available method of handling it which has greater practical advantages. <u>See</u> Fed. R. Civ. P. 23, Advisory Committee Note, 1966 Amendment to 23(b)(3); <u>Johnston</u>, 265 F.3d at 194 ("A class action must represent the best available method for the fair and efficient adjudication of the controversy"). "Superiority must be looked at from the point of view (1) of the judicial system, (2) of the potential class members, (3) of the present plaintiff, (4) of the attorneys

13

for the litigants, (5) of the public at large, and (6) of the defendant. . . . Superiority must also be looked at from the point of view of the issues." Katz v. Carte Blanche Corp., 496 F.2d 747, 760 (3d Cir. 1974). In the case at bar, this Court finds that neither the requirement of predominance nor that of superiority could be met with respect to the putative class (in view of different evidentiary burdens and legal standards associated with each claim raised by each Plaintiff or subclass of Plaintiffs, as well as qualitative and quantitative differences in corresponding potential defenses, and also in view of the uniqueness of certain injuries allegedly suffered by some Plaintiffs or subclass(es) of Plaintiffs, e.g., impotency, and also of the term served by each Plaintiff or subclass(es) of Plaintiffs at the facility)[5] since -- if Plaintiffs' claims proceed past sua sponte dismissal stage -- the resolution of the bulk of the matters raised by each Plaintiff of the putative class would require its own minitrial at both the liability and damages stages.

13. Therefore, certification of Plaintiffs' putative class is improper in view of Plaintiffs' failure to meet the

---

[5]
    It is apparent from the face of Plaintiffs' complaint that Plaintiffs cannot have the same predominant claims and injuries since a plaintiff cannot be simultaneously committed as a result of a plea negotiation and a jury conviction, or simultaneously Hispanic and non-Hispanic, or simultaneously impotent and not impotent.

typicality, adequacy, predominance and superiority requirements, while certification of Plaintiffs' putative subclasses is improper in view of Plaintiffs' failure to assert facts indicating that the numerosity requirement is met.

14. In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"), Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996). Congress's purpose in enacting the PLRA was "primarily to curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Tort Claims Act . . . many of which are routinely dismissed as legally frivolous." Santana v. United States, 98 F.3d 752, 755 (3d Cir. 1996). A crucial part of the congressional plan for curtailing meritless prisoner suits is the requirement, embodied in 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), that a court must dismiss, at the earliest practicable time, any prisoner actions that are frivolous or malicious, fail to state a claim, or seek monetary relief from immune defendants. However, in determining the sufficiency of a complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. See Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court should "accept as true all of the allegations in the complaint

15

and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, lend credit to a pro se plaintiff's "bald assertions" or "legal conclusions." Id. Thus, "[a] pro se complaint may be dismissed for failure to state a claim only if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)).

15. The factual statement made in Plaintiffs' Complaint do not provide this Court with sufficient information to assess claims raised by each individual Plaintiff. However, if a plaintiff believes that he or she can allege facts showing that one or more of the Defendants violated his or her rights, then he or she may submit for filing an amended complaint as of right at any time before a responsive pleading is served. See Fed. R. Civ. P. 15(a). Therefore, all Plaintiffs may submit for filing their individual complaints setting forth the facts in support of each Plaintiff's claims.

16. Furthermore, the Clerk will not file a civil pleading unless the person seeking relief pays the entire applicable filing fee in advance or applies for and is granted in forma pauperis

16

status pursuant to 28 U.S.C. § 1915. See Local Civil R. 5.1(f). The filing fee for a civil rights complaint is $350.00. See 28 U.S.C. § 1914(a).

17. The requirements for a person seeking to file his or her application in forma pauperis pursuant to 28 U.S.C. § 1915 differs depending on whether the person is a prisoner or non-prisoner. It is, however, not apparent from the face of Plaintiffs' complaint which Plaintiff(s), if any, are currently qualified as prisoners and which Plaintiff(s), if any, is currently civilly committed. See generally, Docket Entry No. 1.

18. If a non-prisoner seeks permission to file a civil rights complaint in forma pauperis, he or she must file an application to proceed in forma pauperis and affidavit of poverty that includes a statement of all income and assets that such person possesses, that the person is unable to pay such filing fees, as well as the nature of the action and person's belief that he or she is entitled to redress. See 28 U.S.C. § 1915(a).

19. If a prisoner seeks permission to file a civil rights complaint in forma pauperis, the PLRA requires the prisoner to file an affidavit of poverty and a prison account statement for the six-month period immediately preceding the filing of the complaint. See 28 U.S.C. § 1915(a)(2). The PLRA further

17

provides that, if the prisoner is granted permission to file the complaint in forma pauperis, then the Court is required to assess the $350.00 filing fee against the prisoner and collect the fee by directing the agency having custody of the prisoner to deduct installment payments from the prisoner's prison account equal to 20% of the preceding month's income credited to the account for each month that the balance of the account exceeds $10.00. See 28 U.S.C. § 1915(b). In addition, if the prisoner is granted permission to proceed in forma pauperis, then the PLRA requires this Court to screen the complaint for dismissal and to dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an defendant who is immune from such relief. The PLRA further provides that, if a prisoner has, on three or more occasions while incarcerated, brought an action or appeal in a federal court that was dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from immune defendants, then the prisoner may not bring another action in forma pauperis unless he or she is in imminent danger of serious physical injury. See 28 U.S.C. § 1915(g).

IT IS THEREFORE on this $\frac{50}{}$ day of January, 2007, ORDERED that certification of Plaintiffs' *putative class* is denied *with*

18

*prejudice* for failure to meet the typicality, adequacy, predominance and superiority requirements; and it is further

ORDERED that certification of Plaintiffs' *putative subclasses* is denied *without prejudice* for failure to assert facts indicating that the numerosity requirement is met; and it is further

ORDERED that Plaintiffs' application for the appointment of pro bono counsel is denied *without prejudice* as premature; and it is further

ORDERED that the Clerk shall administratively terminate this action without filing Plaintiffs' complaint or assessing a filing fee and close the file in this matter; and it is further

ORDERED that the Clerk of the Court shall open a *new case for each individual Plaintiff* in this action; and it is further

ORDERED that the Clerk shall enter this Order as Docket Entry No. 1 in each such new case (hereinafter "New Matters") without any other entries;[6] and it is further

ORDERED that the Clerk shall administratively terminate each of such New Matters *without assessing a filing fee*; and it is further

ORDERED that administratively termination of any such New Matters is not a "dismissal" for purposes of the statute of

---

6

Such Docket Entry No. 1 should be interpreted as incorporating by reference Plaintiffs' complaint filed in the instant matter.

19

limitations, and that if any of such New Matters is reopened pursuant to the terms of this Order, it is not subject to the statute of limitations bar, provided the original Plaintiffs' complaint *in this action* was timely filed, see <u>McDowell v. Delaware State Police</u>, 88 F.3d 188, 191 (3d Cir. 1996); <u>Williams-Guice v. Board of Education</u>, 45 F.3d 161, 163 (7th Cir. 1995); and it is further

ORDERED that each Plaintiff may have his New Matter reopened if, within 30 days of the date of the entry of this Order, Plaintiff either pre-pays the $350.00 filing fee or files with the Clerk a complete application to proceed <u>in forma pauperis</u>, as required by 28 U.S.C. § 1915 and explained in this Order; and it is further

ORDERED that, if any Plaintiff prepays the $350.00 filing fee or files a complete application to proceed <u>in forma pauperis</u>, as required by 28 U.S.C. § 1915 and explained in this Order, within 30 days of the date of the entry of this Order, then the Court will enter an order directing the Clerk to reopen Plaintiff' New Matter; and it is further

ORDERED that, within 30 days of the date of the entry of this Order, any Plaintiff who prepays the $350.00 filing fee or files a complete application to proceed <u>in forma pauperis</u>, as required by 28 U.S.C. § 1915 and explained in this Order, shall submit for filing in Plaintiff's New Matter his amended complaint *stating*

20

*specific facts in support of such Plaintiff's individual claims;* and it is further

ORDERED that any Plaintiff(s) who files an amended complaint in his New Matter pursuant to the terms of this Order may, if such Plaintiff(s) so desire(s), move this Court for certification of a class of those who are similarly situated, setting forth facts indicating that the requirements of Rule 23, as explained in this Order, are satisfied with respect to such putative class; and it is further

ORDERED that the Clerk shall serve upon each Plaintiff this Order by regular mail, together with a blank *prisoner's* Application to proceed <u>in forma pauperis</u>, as well as a blank *non-prisoner's* Application to proceed <u>in forma pauperis</u>, and a blank form of Civil Complaint pursuant to 42 U.S.C. § 1983; and it is further

ORDERED that, pursuant to 28 U.S.C. § 1915(e)(1) and § 4(a) of Appendix H of the Local Civil Rules, the Clerk shall notify each Plaintiff of the opportunity to reapply in writing for the appointment of <u>pro bono</u> counsel in accordance with the factors set forth in <u>Tabron v. Grace</u>, 6 F.3d 454 (3d Cir. 1997), and the Clerk shall enclose with such notice a copy of Appendix H and a form Application for Appointment of <u>Pro Bono</u> Counsel (Plaintiffs, however, are reminded that such appointment is neither guaranteed nor automatic); and it is finally

**ORDERED** that, if at any time Plaintiff(s) again seek(s) the appointment of <u>pro</u> <u>bono</u> counsel, pursuant to Fed. R. Civ. P. 5(a) and (d), Plaintiff(s) shall (1) serve a copy of the Application for Appointment of <u>Pro</u> <u>Bono</u> Counsel by regular mail upon each party at his last known address or, if the party is represented in this action by an attorney, upon the party's attorney at the attorney's address, and (2) file a Certificate of Service with the Application for <u>Pro</u> <u>Bono</u> Counsel.

01-30-07

_____
        **PETER G. SHERIDAN**
    **United States District Judge**

22